# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE

PAGE OF PAGES 1 | 2

2. AMENDMENT/MODIFICATION NO. AS06

3. Effective Date See Blk 16C

4. REQUISITION/PURCHASE REQ. NO.

5. PROJECT NO. (If applicable)

6. ISSUED BY CODE

General Services Administration
General Products Center
Morale, Welfare, and Recreational Products Cont. Div. (7FXPM)
819 Taylor Street
Fort Worth, TX 76102

7. ADMINISTERED BY *(If other than Item 6)* CODE

72A and IFF Remittance Delegated to:
GSA/FSS (9FQ)

8. NAME AND ADDRESS OF CONTRACTOR *(No., street, county, State and Zip Code)*

**Mr. Duke Miller**
**Thrustmaster of Texas, Inc.**
**12227 FM 529**
**Houston, TX 77284**

ORIGINAL

(3)

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED *(SEE ITEM 11)*

X

10A. MODIFICATION OF CONTRACT/ ORDER NO. **GS-07F-0204J**

10B. DATED *(SEE ITEM 13)* **5/01/99**

CODE | FACILITY CODE

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging the receipt of the amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA *(If required)* *N/A*

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (3) | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b) |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| XX | D. OTHER *(Specify type of modification and authority)* 552.243-72, Modifications and contractor's letter dated April 02, 01, |

E. IMPORTANT: Contractor X is not, ___ is required to sign this document and return _____ copies to this issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*

a. The above-referenced contract for Schedule 539, Group 19 Part I, Marine Craft and Equipment, Inboard and Outboard Engines, Towable Bladders and Floatable Barriers and Buoys, is hereby modified to incorporate the "Thrustmaster Deck-Mounted Models" Price List, dated April 2, 2001. This price list reflects the addition of new items.

15A. NAME AND TITLE OF SIGNER (Type or Print)

16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)*
Carol A. Batesole
Contracting Officer

15B. CONTRACTOR/OFFEROR

*(Signature of person authorized to sign)*

15C. DATE SIGNED

16B. UNITED STATES OF AMERICA
Carol A. Batesole
*(Signature of Contracting Officer)*

16C. DATE SIGNED 6/27/01

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105

STANDARD FORM 30 (REV. 10-83)
PRESCRIBED BY GSA
FAR (48 CFR) 53.243

b. The basic discount and price relationship remain unchanged.
c. A Quantity Discount of "10% on quantity of more than 5 of any one item on entire contract" remains as stated on contract.
d. All other terms and conditions remain unchanged.

THRUSTMASTER OF TEXAS, INC.
12227 FM 529
HOUSTON, TEXAS 77041

*For A Big Thrust In The Right Direction*

approved Jun 27, 01 Delaney/Cabrera Contract Spec'l

# PRICE LIST

EFFECTIVE DATE: APRIL 2, 2001

## THRUSTMASTER DECK MOUNTED 360 DEGREE STEERABLE OUTBOARD HYDRAULIC PROPULSION UNITS

PRICES IN US DOLLARS

| Model No. | OD-75 | OD-100 | OD-125 | OD-150 | OD-200 | OD-250 | OD-300 |
|---|---|---|---|---|---|---|---|
| Basic Unit | 153,760 | 182,250 | 192,160 | 205,940 | 232,280 | 283,160 | 298,790 |

OPTIONAL

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Prop Depth Adjustment | 25,800 | 29,600 | 29,600 | 29,600 | 29,600 | 36,400 | 38,800 |

TECHNIAL DATA

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Diesel Engine (Cummins) | 4BT3.9 | 6BT5.9 | 6BTA5.9 | 6CT8.3 | 6CTA8.3 | NTA855 | NTA855 |
| Continuous HP Rating | 75 | 100 | 125 | 150 | 200 | 250 | 300 |
| Bollard Thrust (lbs) | 1,650 | 2,290 | 2,585 | 3,050 | 3,835 | 4,940 | 5,335 |
| Standard Propellor Size | 30 | 36 | 36 | 38 | 44 | 48 | 48 |
| Weight | 3,800 | 4,200 | 6,100 | 8,000 | 8,200 | 8,400 | 9,100 |

Basic unit price for each Basic Unit is for a packaged, self-contained, outboard unit. The unit price includes the outdrive leg with propeller, anti-cavitation plate, skeg, hydraulic motor and the integrated diesel-hydraulic power unit which includes a Cummins industrial cooled engine, hydraulic power pack, hydraulic accessories and a remote control panel

This is to certify that this price list reflects current commercial pricing for the above listed models.

Joe R. Bekker, President
6/27/2001

THRUSTMASTER OF TEXAS, INC.
12227 FM 529
HOUSTON, TEXAS 77041

*For A Big Thrust In The Right Direction*

approved Jun 27, 01 [illegible] Contract Spec't Mod A506

# PRICE LIST

EFFECTIVE DATE: APRIL 2, 2001

## THRUSTMASTER DECK MOUNTED 360 DEGREE STEERABLE OUTBOARD HYDRAULIC PROPULSION UNITS

PRICES IN US DOLLARS

| Model No. | OD-75 | OD-100 | OD-125 | OD-150 | OD-200 | OD-250 | OD-300 |
|---|---|---|---|---|---|---|---|
| Basic Unit | 153,760 | 182,250 | 192,160 | 205,940 | 232,280 | 283,160 | 298,790 |

**OPTIONAL**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Prop Depth Adjustment | 25,800 | 29,600 | 29,600 | 29,600 | 29,600 | 36,400 | 33,800 |

**TECHNIAL DATA**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Diesel Engine (Cummins) | 4BT3.9 | 6BT5.9 | 6BTA5.9 | 6CT8.3 | 6CTA8.3 | NTA855 | NTA855 |
| Continuous HP Rating | 75 | 100 | 125 | 150 | 200 | 250 | 300 |
| Bollard Thrust (lbs) | 1,650 | 2,290 | 2,585 | 3,050 | 3,835 | 4,940 | 5,335 |
| Standard Propellor Size | 30 | 36 | 36 | 38 | 44 | 48 | 48 |
| Weight | 3,800 | 4,200 | 6,100 | 8,000 | 8,200 | 8,400 | 9,100 |

Basic unit price for each Basic Unit is for a packaged, self-contained, outboard unit. The unit price includes the outdrive leg with propeller, anti-cavitation plate, skeg, hydraulic motor and the integrated diesel-hydraulic power unit which includes a Cummins industrial cooled engine, hydraulic power pack, hydraulic accessories and a remote control panel

This is to certify that this price list reflects current commercial pricing for the above listed models.

Joe R. Bekker, President
6/27/2001

RIDBERG, PRESS & SHERBILL, LLP
SUITE 650
THREE BETHESDA METRO CENTER
BETHESDA, MARYLAND 20814-5329

MICHAEL D. RIDBERG
FREDRIC A. PRESS
RAYMOND J. SHERBILL
NORMAN L. EULE
JOEL S. ARONSON
STEPHEN E. LEBOWITZ
STUART A. SCHWAGER
STACEY R. WERNER
ARETINA PAPAGIANNOPOULOS

TELEPHONE
(301) 913-5770
FACSIMILE
(301) 913-5769

OF COUNSEL
GEORGE F. BASON, JR.

February 21, 2002

**By Federal Express**
**Copy Without Attachments via Facsimile to 757-878-5769**

Lance Beuschel, Contracting Officer
U.S. Army Transportation Center
Directorate of Peninsula Contracting
2746 Harrison Loop
Fort Eustis, Virginia 23604-5292

Re: Terminations for Default for DABT57-01-0202, 0222, and 0223

Dear Mr. Beuschel:

As discussed over the last several days, this firm represents Thrustmaster of Texas, Inc. On February 8, 2002, you issued a notice of termination of default to Thrustmaster of these GSA Schedule orders for a total of three tunnel thrusters. Under the applicable contracts as modified, these thrusters were due for delivery FOB Thrustmaster's facility in Houston, Texas on Thursday, February 7, 2002, for transportation by truck to Virginia Beach, Virginia. At the time the notice of termination for default was issued, no one from the Government had called Thrustmaster to determine whether the thrusters had been loaded onto the delivery truck by 12 midnight on February 7th, which would have clearly constituted completed delivery.

On behalf of Thrustmaster, I contacted you on February 8th to explain that the thrusters were complete and ready to ship on February 7, that there had been an as yet unexplained problem in the transportation that had been arranged for the 7th, and requested that in light of the circumstances and the *de minimis* nature of the delay that we work to resolve and rescind the termination and ship the thrusters forthwith. You replied with a letter requesting confirmation of the facts Thrustmaster asserted and indicated that if documentation was provided by the 11th, the Government would consider rescinding the termination for default. Accordingly, on that same February 8th day we transmitted by email to you photographs of the thrusters that were packed and immediately ready to ship, but for the termination notice, and a confirmation of the shipping order set for February 7th, which confirmation was generated and sent by the carrier itself and showed February 7 as the order and pickup date.

That afternoon we learned why the shipment was not loaded on Thursday, February 7, despite its initial scheduling for that date. A representative from the Government had called Thrustmaster's shipping supervisor mid-day on February 7th to see if the shipment was already sent. It had not yet been loaded. Thrustmaster's shipping supervisor asked if the Government's receiving facility in Virginia Beach would be open Saturday or Sunday, since if the shipment left Thursday, it would arrive there over the weekend and have to park unprotected, and tie up an additional driver day, until the facility opened Monday. The Government representative replied that the receiving facility was closed over the weekend. Thrustmaster's shipping supervisor then made a sensible determination that the thrusters should be loaded early Friday morning, since in that way they would arrive closer to the Monday opening time of the receiving facility. He did not consult with any one else at Thrustmaster, he only used his common sense that the thrusters should be sent at a time calculated to arrive at the nearest first date that the receiving facility will be open. He calculated that to be first thing Friday morning. However, your termination for default was sent to Thrustmaster (and promptly received) via email at 7:42 a.m. Eastern time on Friday, February 8th (6:42 a.m. Central time at Thrustmaster's Houston facility), before this loading could occur. The loading would have occurred first thing Friday morning if not for your notice.

On Monday, February 11, we provided you with the shipping supervisor's affidavit attesting to these facts, together with the bill of lading he had prepared on February 7.

Starting on Friday, February 8, we have conversed almost daily to determine if you, as contracting officer, have received the approvals you consider necessary to rescind the termination for default. We have informed you that the thrusters remain ready to ship immediately, that a driver has been waiting, and based on our conversations we have anticipated each day that the termination will be rescinded.

We appreciate the manner in which you have and are working to bring about a sensible and expeditious resolution to this issue. However, as of this morning, some time after we anticipated the termination would have already been rescinded, we have not received word. Accordingly, we believe it is appropriate to provide this letter for the record. Thrustmaster has additional concerns about the termination, raised by the facts (among others) that a competing contractor apparently persuaded the user earlier to terminate (for convenience) an order for three of the same thrusters, that Thrustmaster was earlier informed that the subject thruster order might also be terminated for convenience, that the Government contacted Thrustmaster February 5 to determine termination for convenience charges and initially left open the possibility that at that late date the order would still be terminated for convenience, and by the fact that the Government did not check to see if there were actually grounds for termination before issuing its default notice at 6:42 a.m. Houston time on February 8.

In any event, for the record, Thrustmaster maintains that any brief delay was fully excusable under the circumstances. Thrustmaster's shipping supervisor simply wanted to accomodate for the opening time of the Government's receiving facility. Since this is a GSA schedule order, whether the alleged delay was excusable is a matter to be referred to the schedule contracting officer. Any adverse determination is then appealable to the GSBCA. FAR 8.405-5; *Centennial Leasing*, GSBCA No. 12321, 93-3 BCA P26,200. Accordingly, if you are unable to obtain approval for the retraction of the termination for default, we request that you forward this letter and its attachments (consisting of the February 8 photographs, the confirmation of the February shipment order, the affidavit of Danny Chapman and its attached bill of lading) to the schedule contracting officer for determination of whether the alleged delay was excusable. Thrustmaster stands ready to provide any further information to the schedule contracting officer.

I continue to believe that this is a very sorrowful set of facts for the Government to proceed with a default termination, and we continue to request that you rescind the termination notice without need for further legal action. In the meantime Thrustmaster reserves all rights and claims. Thank you.

Sincerely,

Raymond J. Sherbill

RJS/yt

cc: Joe R. Bekker, Thrustmaster of Texas, Inc.

# NAVAL SURFACE WARFARE CENTER CARDEROCK DIVISION DET NORFOLK
## COMBATANT CRAFT DEPARTMENT (CCD)
## TASK DESCRIPTION, COST ESTIMATE AND SCHEDULE
## FOR
## U.S. ARMY TACOM LSV ESP TECHNICAL SUPPORT

REFERENCE: MTMCTEA Report OA 89-4e, Cargo Capacity Analysis of the Logistics Support Vessel (LSV), dated December 1989

**BACKGROUND**: NSWCCD was previously tasked to conduct a survey of the LSV fleet community in order to identify systems onboard the existing vessels which would require service, upgrade and/or modernization in order to extend the service-life of the vessels. The systems identified as candidates for inclusion in the ESP program in order of precedence were as follows: Replacement of the bow thruster to a more adequate size; replacement/installation of bow and stern ramp locking mechanisms; remanufacture of the main propulsion engines; increased ramp cycle times by enhancing the hydraulic system; dynamic positioning; increasing the number of deck tie-down fittings to agree with reference (a); and replacing shipboard installed black iron piping with copper-nickel equivalent. Due to funding constrains and initial cost estimates it was determined that only the first three items could be addressed.

**RECOMMENDATION**: Develop shipyard work and verification test specifications, drawings, and Modification Work Order instructions to effect component upgrades and modernization on the LSV 1 Class and LSV 6 vessel systems as follows: the bow thruster and drive assembly; bow and stern ramp locking mechanisms; and main engines. Drawings and specifications will be developed in a manner to facilitate their inclusion in OCCM dry dock solicitation and incorporation into a time restricted vessel availability performed outside of the OCCM cycle.

**TASK DESCRIPTION**: NSWCCD shall develop work and verification test specifications to include dock and sea trials, system/component rip out and installation drawings, and Modification Work Order instructions to provide technical instruction and guidance for installing activity to effect system and component upgrades and modernization to the LSV 1 Class and LSV 6 vessels (total of 6 ships) as follows. Additionally, NSWCCD personnel will provide three man weeks of on-site technical support to effect equipment installation, testing and sea trials at installing activity yard for each vessel availability.

Task 1. Bowthruster and Bowthruster Engine: Develop and provide drawing for temporary structural ripouts and shipping access for the removal of the existing bowthruster and 250 bhp engine and the installation of new bowthruster and 660 bhp engine. Develop and provide drawing for temporary removal of piping and ventilation interference in way of the bowthruster removal and installation. Develop and provide drawing for engine foundation and deck grating modifications in way of bowthruster removal and installation. Develop and provide shipyard specifications and Modification Work Order (MWO) for the removal and installation, including equipment and system operational tests and dock/sea trials to verify satisfactory bowthruster operation and performance and restoring paint and deck coverings. Provide validation data for any new components used in modification of the system. Validation data to include, as a minimum, a catalog cut sheet of the item (where applicable), weight of the item, pricing, lead time, and any other pertinent information.

Task 2: Bow and Stern Ramp Locks: Develop and provide drawing for bow and stern ramp lock replacement. Develop and provide shipyard specifications for the replacement, including operational tests to verify satisfactory bow ramp lock operation and restoring paint and deck coverings. Provide validation data for any new components used in modification of the system. Validation data to include, as a minimum, a catalog cut sheet of the item (where applicable), weight of the item, pricing, lead time, and any other pertinent information.

Task 3: Main Engines: Develop and provide drawing for temporary structural ripouts and shipping access for the removal of two (2) existing EMD 16-645-E6 main engines and the installation of two (2) remanufactured EMD 16-645-E6 engines provided by OEM distributor. Develop and provide drawing for temporary removal in way of the main engines' removal and installation, to include piping, ventilation, furniture, etc. Develop and provide shipyard specifications and Modification Work Order (MWO) for the removal and installation, including equipment and system operational tests and dock/sea trials to verify satisfactory engine operation and performance and restoring paint and deck coverings. Provide validation data for any new components used in removal of the existing engines and installation of the remanufactured engines. Validation data to include, as a minimum, a catalog cut sheet of the item (where applicable), weight of the item, pricing, lead time, and any other pertinent information.

Task 4 On-site Technical Support: Provide three weeks of on-site technical support during each vessel's availability for engineering assistance and guidance to installing activity personnel to effect equipment installations and system modifications as defined by drawings and work specifications. On-site support will include component and system verification testing phase and Dock/Sea trial phase. Technical representative will validate the satisfactory completion of equipment modifications and installations through visual inspection and by witnessing operational testing. Additionally, the on-site rep will participate and assist in troubleshooting in determining any corrective actions required as a result of out of specification test and inspection parameters.

**COST ESTIMATE:**

| | |
|---|---|
| Tasks 1-3: | $220.0K |
| Task 4: | $130.0K |
| Total: | $350.0K (See Note 2) |

1. This estimate represents a level of effort cost estimate. All tasks will be undertaken on a cost reimbursement basis. If at any time it appears the cost of work will exceed or be less than the original estimate, CCD Program Manager will notify TACOM immediately with explanations and request further advice. Any excess funds will be returned at the completion of the task.

2. TACOM has funded $410.0K to date in support of this task(MIPR W56HZW-99-EKE-047 ($95.0K) and MIPR BEBR-02B2W45 ($315.0K)) Balance remaining is approximately $350K. Request MIPR BEBR-02B245 have period of performance extended to coincide with vessel OCCM/RAV schedule end date.

3. NSWCCD personnel shall conduct local shipchecks as necessary to complete this task.

4. NSWCCD personnel shall be available for meetings, as requested by TACOM, throughout the performance of the task. These meetings shall be intermittently scheduled.

**ESTIMATED COMPLETION DATE:** The deliverables (Task 1-3) shall be completed by 30 Sep 00. The completion date for all technical support (Task 4) will depend upon schedule of OCCM/RAV of LSV 1 class vessels.

**NSWCCD DET Norfolk TECHNICAL POINT OF CONTACT:**
John Achom, Code 231, (757) 686-7728 or DSN 546-9100 ext 7728
Kip Davis, Code 231, (757) 686-7349 or DSN 564-9100 ext 7349

DEPARTMENT OF THE ARMY
US ARMY TRANSPORTATION CENTER
DIRECTORATE OF PENINSULA CONTRACTING
2746 HARRISON LOOP
FORT EUSTIS, VIRGINIA 23604-5292

REPLY TO
ATTENTION OF:

Business Management Divsion

June 6, 2002

Mr. Joe R. Bekker
Thrustmaster of Texas, Incorporated
12227 FM 529
Houston, Texas 77041

Dear Mr. Bekker:

On February 8, 2002 I issued a termination for default memorandum for the following order with your company: DABT57-01-F-0202. In accordance with established regulations, you were afforded a period of 90 days from the date you received the notice to appeal the termination decision to the Agency Board of Contract Appeals and 12 months to appeal to the United States Court of Federal Claims.

Due to subsequent discussions between your company and myself, and taking into account that you appealed my decision to the General Services Administration, I feel it necessary to re-establish the timeframe for appealing the aforementioned termination decision.

This is the final decision of the contracting officer. You may appeal this decision to the Agency Board of Contract Appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Agency Board of Contract Appeals and provide a copy to the contracting officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the Agency Board of Contract Appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the Agency Board of Contract Appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C.603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Should you have any questions, please contact me at (757) 878-5769.

Sincerely,

Lance R. Beuschel

Lance R. Beuschel
Contracting Officer

Copies Furnished:
Mr. Sherbill