# In the United States Court of Federal Claims

No. 03-1420C
(Filed: February 11, 2004)

* * * * * * * * * * * * * * * * * * * * * *

THRUSTMASTER OF TEXAS, INC.,

*Plaintiff,*

v.

THE UNITED STATES,

*Defendant.*

* * * * * * * * * * * * * * * * * * * * * *

Contracts; Contract Disputes Act; Cases in Admiralty; Transfer to cure lack of jurisdiction.

*Raymond J. Sherbill*, Bethesda, MD, for plaintiff.

*Claudia Burke*, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, for the United States. With her on briefs were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, *Robert E. Kirschman, Jr.*, Assistant Director, *Timothy Ryan, CPT*, United States Department of the Army, of counsel.

OPINION

BRUGGINK, *Judge.*

This is an action brought under the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 601-613 (2002). Plaintiff, Thrustmaster of Texas, Inc., seeks a declaration that the government erroneously terminated plaintiff's contract "for default" rather than "for convenience." Plaintiff seeks compensation for the improper termination. Before the court is defendant's motion to dismiss for lack of jurisdiction. Thrustmaster concurs that this court lacks jurisdiction, but asks that we transfer the claim to federal district court pursuant to 28 U.S.C. § 1631 (2000).

## BACKGROUND

Thrustmaster is incorporated in Texas and has its principal place of business in Houston. It is a manufacturer and supplier of marine propulsion equipment. In 1999, Thrustmaster entered into a five-year supply contract with the United States, acting through the Department of the Army and General Services Administration, to supply an indefinite number of deck-mounted hydraulic propulsion units. The contract was later amended to include bow tunnel thrusters. Three of the Army's logistics supply vessels were scheduled to undergo routine maintenance and modernization while dry-docked during 2001. Thrustmaster's suit arises out of an order the Army placed for tunnel thrusters for these three vessels.

## DISCUSSION

Defendant's motion to dismiss is based on an asserted lack of jurisdiction. Defendant maintains that plaintiff's CDA action arises out of a maritime contract and thus cannot be heard in this court. The CDA, indeed, preserves admiralty jurisdiction in the federal district courts for suits arising out of maritime contracts. *See* 41 U.S.C. § 603; 46 U.S.C. § 742 (2000). Plaintiff does not question this assertion. It is well established in admiralty jurisprudence that a contract to repair a vessel is maritime while a contract to construct one is not. *New Bedford Dry Dock Co. v. Purdy*, 258 U.S. 96, 99 (1922). As the Federal Circuit taught in *Umpqua Marine Ways, Inc. v. U.S.*, 925 F.2d 409 (Fed. Cir. 1991):

> One of the ancient tenets of admiralty provides that a contract for the repair, renovation, or conversion of an existing vessel is maritime in nature because "[i]n the baptism of launching she receives her name, and from the moment her keel touches the water she is transformed, and becomes a subject of admiralty jurisdiction. 'She acquires a personality of her own; becomes competent to contract, and is individually liable for her obligations; upon which she may sue in the name of her owner, and be sued in her own name.'"

*Id.* at 411 (quoting *Tucker v. Alexandroff*, 183 U.S. 424, 438 (1902)). Moreover, "the scope of admiralty jurisdiction extends . . . to contracts that are 'wholly maritime' in nature." *Marine Logistics, Inc. v. England*, 265 F.3d 1322 (Fed. Cir. 2001); *Sea-Land Service, Inc. v. Danzig*, 211 F.3d 1373, 1378 (Fed. Cir. 2000). Plaintiff is in the business of manufacturing and supplying a variety of marine propulsion units and other equipment designed and marketed for marine

vessels. A bow thruster is manufactured exclusively to improve navigability and handling of marine vessels, particularly for vessels that dock frequently. The very nature of a bow thruster is maritime. We thus agree with the parties that a contract to supply bow thrusters for the sole purpose of improving and servicing vessels is wholly maritime, and that the court lacks jurisdiction under the CDA.[1/]

The real question is whether to transfer rather than dismiss. We are directed to do so by 28 U.S.C. § 1631 when three factors are present: the transferring court lacks jurisdiction; the transferee court would have had jurisdiction if the action had been properly filed; and when transferring is in the interest of justice. The first factor is present, as we have explained above. The other two factors are present as well.

The federal district courts have traditionally held exclusive jurisdiction over maritime contracts. "In our system of Federal courts, jurisdiction over maritime matters is vested exclusively in the district courts, and the Court of Claims is precluded from entertaining such actions, even though they might otherwise be cognizable under the terms of the Tucker Act." *Alaska Barge & Transport, Inc. v. U. S.*, 179 Ct. Cl. 216 (1967); *see also Southwest Marine of San Francisco, Inc. v. U.S.*, 896 F.2d 532 (Fed. Cir. 1990); *Jo Mar Corp. v. U.S.*, 15 Cl. Ct. 602, 607 (1988); *Whitey's Welding & Fabrication, Inc. v. U.S.*, 5 Cl. Ct. 284, 285 (1984).

Although the CDA governs contract claims against the United States, it makes an exception for cases in admiralty. Under the CDA, "suits under section 609 of this title, arising out of maritime contracts, shall be governed by chapter 20 or 22 of Title 46 as applicable to the extent that those chapters are not inconsistent with this chapter." 41 U.S.C. § 603. Plaintiff's claim, therefore, is governed by the jurisdictional limitations set forth in the Suits in Admiralty Act ("SAA"), which provides in relevant part:

> In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States or against any corporation

---

[1/] We thus need not address the merits of defendant's alternative theory for lack of jurisdiction, namely that plaintiff's failure to obtain a final decision by the contracting officer deprives us of jurisdiction. *See* 41 U.S.C. § 605.

> mentioned in section 741 of this title. Such suits shall be brought in the district court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found.

46 U.S.C. § 742; *see also Whitey's Welding*, 5 Cl. Ct. at 287 ("[T]he legislative history [of the CDA] firmly establishes the intent of Congress to retain claims under maritime contracts within the exclusive jurisdiction of the district courts."). The CDA thus preserves the district courts' exclusive oversight for suits ordinarily within admiralty jurisdiction. 41 U.S.C. § 603; 46 U.S.C. § 742.

Plaintiff asserts, and defendant does not disagree, that it would be in the interest of justice to transfer in lieu of dismissal because the twelve-month limitation period set forth in 41 U.S.C. § 609(a)(3) would render this action stale if refiled. We do not necessarily endorse plaintiff's analysis, but agree that transferring is in the interest of justice in light of the risk.[2/]

Plaintiff moves to transfer to the United States District Court for the District of Columbia. Defendant opposes plaintiff's choice of venue because it does not satisfy statutory requirements. Venue is appropriate for admiralty claims in "the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found." 46 U.S.C. § 742. It is apparent from the complaint that plaintiff is incorporated in Texas and has its principal place of business in Houston. We agree with defendant that venue is appropriate in the Eastern District of Texas.

## CONCLUSION

---

[2/] In a maritime case, the equitable doctrine of laches historically determines the appropriate limitation period. *See TAG/ICIB Serv. v. Pan Am. Grain Co*. 215 F.3d 172, 175 (1st Cir. 2000). A laches analysis looks to the limitation period in the most analogous statute of limitations "to establish burdens of proof and presumptions of timeliness and untimeliness." *Id.; see also Venus Lines Agency, Inc. v. CVG Intern. America, Inc*. 234 F.3d 1225, 1230 (11th Cir. 2000). Although 41 U.S.C. § 609(a)(3) establishes a one-year limitation, we note that section 603 requires suits under section 609 arising out of maritime contracts to be governed by the SAA. *See* 46 U.S.C. § 745 ("Suits as authorized by this chapter may be brought only within two years after the cause of action arises."). We need not resolve the issue.

The Court of Federal Claims does not have jurisdiction over claims arising out of maritime contracts. In the interest of justice, plaintiff's request to transfer in lieu of dismissal is granted. The clerk is directed to transfer this case to the United States District Court for the Eastern District of Texas. Each party to bear its own costs.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Judge